## 20392

GENERAL INSURANCE COMPANY OF AMERICA, Plaintiff-Respondent, v. PALMETTO BANK et al., Defendants, of whom Home Wholesale, Inc., and Edgar O. R. Sadler are, Appellants.

HOME WHOLESALE, INC., Plaintiff Appellant, v. GENERAL INSURANCE COMPANY OF AMERICA et al., Defendants, of whom General Insurance Company of America is, Respondent.

(233 S. E. (2d) 699)

356

*W. Paul Culbertson, Esq.,* of *Culbertson and Whitesides,* Laurens, *for Appellant,*

*William M. Grant, Jr., Esq.,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for Respondent,*

March 28, 1977.

GREGORY, Justice:

Home Wholesale and General brought declaratory judgment actions to determine their rights under a liability insurance policy issued to Home Wholesale by General. Home Wholesale appeals from the grant of summary judgment to General. The issue is whether General is under a duty to defend Home Wholesale against two actions arising out of a distraint of property by Home Wholesale. We find no reversible error in the lower court's judgment and affirm.

Home Wholesale sublet a warehouse to Booth. Booth borrowed $20,000.00 from Palmetto Bank to finance the purchase of a number of carbonated "slush" machines. The bank took a security interest on the machines and filed a financing statement with the Clerk of Court for the county in which the warehouse was situated. Booth then stored the machines in the warehouse.

Booth defaulted on the rent. After sending two letters to Booth, which were received by him but never replied to, Home Wholesale began proceedings for distraint of rent pursuant to § 41-151 *et seq.*, S. C. Code, 1962, as amended. Apparently the only written notice of the proceedings given to Booth were documents posted on the warehouse. A public sale was held at which Home Wholesale bought the machines for the amount of rent due. Home Wholesale later sold the machines for a higher amount.

Sometime after renting the warehouse (the record does not disclose when), Booth defaulted on his payments to Palmetto Bank. The bank obtained a judgment against him (sometime after the distress sale) and then brought suit against Booth and Home Wholesale, asking for an accounting and judgment against Home Wholesale for the amount

of payments still due. A few months later Booth brought suit against Home Wholesale for an illegal and unreasonable distress.

General's duty to defend these suits is the issue. The lower court held that both suits were actions for "conversion", and that conversion of goods by an insured did not constitute "property damage" or an "occurrence" under the policy. The court relied on two decisions from other jurisdictions [1] that placed conversion actions outside the coverage of policies like Home Wholesale's.

The "Blanket Liability Insurance" policy issued to Home Wholesale said General would pay "all sums which the insured shall become legally obligated to pay as damages because of bodiy injury or property damage to which this insurance applies, caused by an occurrence." [2] The policy further said General must defend any suit seeking damages "on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent."

Home Wholesale argues on appeal that the lower court erred in (1) calling the suits actions for conversion, and (2) ruling there was no "occurrence" or "property damage." Home Wholesale contends that the distraint was in the nature of a legal process and was not therefore "conversion," which is an unlawful assertion of ownership over property; further, the distraint was an "occurrence" and the loss of use of the machines by Booth was "property damage."

We do not agree with these contentions. We think that the suits, whether characterized as for "conversion" or not,

[1] *B & L Furniture Co. v. Transamerica Ins. Co.*, 257 Or. 548, 480 P. (2d) 711 [1971], and *Nortex Oil & Gas v. Harbor Ins. Co.*, 456 S. W. (2d) 489 [Tex. Civ. App. 1970].
[2] The policy defined "property damage" as "injury to or destruction of tangible property." An "occurrence' was "an event, including injurious exposure to conditions, which results . . . in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

did not allege an "occurrence" which caused "property damage."

General's duty to defend against these suits depends on whether the facts alleged in the complaints would bring Home Wholesale within coverage of the policy. *Allstate Ins. Co. v. Wilson,* 259 S. C. 586, 193 S. E. (2d) 527 (1972). Even if the allegations of the complaints are groundless or fraudulent, General must defend; but if the allegations do not state facts that would afford coverage, General would be excused. *Plaxco v. U. S. Fidelity and Guaranty,* 252 S. C. 437, 166 S. E. (2d) 799 (1969); 44 Am. Jur. (2d) "Insurance" § 1535.

The policy requires that there be both (1) an "occurrence" which (2) causes "property damage." First, we do not think there was "occurrence." There was not an "event" which resulted in property damage "neither expected nor intended from the standpoint of the insured." The complaints alleged that Home Wholesale intentionally distrained the machines. Assuming, for argument, that the loss of use by Booth was "damage" to the machines, this damage was certainly expected and intended by Home Wholesale—it was, in other words, not caused by an "occurrence."

Second, we do not think that loss of use, in itself, was "property damage" under the terms of this policy. The only damage here alleged was, of course, the wrongful deprivation of property, not physical injury to the property. We do not think Home Wholesale and General intended to cover an illegal distraint, and although mindful of our decisions construing ambiguous insurance contracts in favor of the insured, we will not torture the meaning of the policy to extend coverage not intended by the parties. *Torrington v. Aetna Casualty & Surety Co.,* 264 S. C. 636, 216 S. E. (2d) 547 (1975).

General's policy was a standard liability policy, written largely in compliance with standards adopted by the insurance

industry in 1966 (*see generally Keeton, Insurance Law* §§ 2.10—2.11 [1971]). In 1973 the industry changed the standard definition of "property damage" to include loss of use as a recognized "injury" to property; that definition is not, of course, before us, the policy of General having been issued to Home Wholesale in 1971. This Court has not interpreted the precise terms before it now in a similar context (*see,* however, the dissenting opinion in *Torrington v. Aetna, supra*), and we read those terms in a common-sense fashion.

For the foregoing reasons, we do not think the lower court erred in holding that the policy afforded Home Wholesale no defense and no coverage with respect to the actions of Palmetto Bank and Booth.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.