20893

Thomas L. BOGGS, d/b/a Boggs Home Builders, Respondent, v. The
AETNA CASUALTY AND SURETY COMPANY, Appellant.

(252 S. E. (2d) 565)

*Cary C. Doyle* and *C. Thomas Cofield, III,* of *Doyle & Cofield,* Anderson, *for appellant.*

*James W. Logan, Jr.,* of *Watkins, Vandiver, Kirven, Gable & Gray,* Anderson, *for respondent.*

February 22, 1979.

NESS, Justice:

This appeal is from an order granting summary judgment in favor of respondent Boggs. We affirm.

This litigation arose from Boggs' construction of a house for Mr. & Mrs. Tilley in Anderson. Construction was completed in early October of 1972. Just prior to completion, some difficulty with drainage of the lot and/or septic tank developed. The Tilleys and Boggs entered into a written agreement wherbey Boggs agreed to correct the drainage problems. Following several unsuccessful attempts by Boggs to remedy the problems, the Tilleys filed suit against him for $40,000 in damages.

Upon receipt of the Tilley complaint, Boggs notified the appellant, Aetna, his insurer. Aetna denied coverage and re-

fused to defend the suit. Following receipt of an amended complaint from the Tilleys, Boggs renewed his demand of Aetna to defend the action. Aetna again denied coverage and refused to defend.

Boggs settled the Tilley claim for $5,580, and paid his attorneys $4,520.25 in fees. The instant action, brought by respondent Boggs, sought (1) reimbursement of the settlement amount; (2) reimbursement of attorneys' fees; and (3) statutory attorneys' fees for the prosecution of this case.

The trial court granted Boggs summary judgment in the amount of $10,100.25 and awarded him statutory attorneys' fees of $1,860.00, concluding that Aetna had acted without reasonable cause in denying coverage and in failing to defend the Tilley suit. We agree.

Respondent Boggs was insured by appellant Aetna under a comprehensive liability policy, a portion of which provided:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, *caused by an occurrence . . .*" (Emphasis supplied).

Thus one of the pivotal questions is whether the seepage of water into the Tilley house, allegedly caused by Boggs' negligent decision to place the house on that particular portion of the lot, was an "occurrence" within the meaning of the policy. In the definitions section of the policy, an "occurrence" is stated to be "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Tr. p. 78).

Appellant Aetna initially asserts that neither Tilley complaint alleged acts and damage covered by the policy. It is well settled that the obligation of an insurer to defend is to be determined by the allegations of the complaint. *Stroup Sheet Metal Works, Inc. v. Aetna Casual-*

*ty & Surety Co.*, 268 S. C. 203, 232 S. E. (2d) 885 (1977); *Allstate Ins. Co. v. Wilson et al.*, 259 S. C. 586, 193 S. E. (2d) 527 (1972); 50 A.L.R. (2d) 465.

Aetna seeks to construe the word "occurrence" as an accident referable to a sudden happening. This construction is erroneous. The phrase "injurious exposure to conditions" incorporated in the policy definition of "occurrence" indicates an occurrence need not be sudden but may be produced over a period of time.

In the case of *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.*, 447 F. (2d) 204 (5th Cir. 1971), an "occurrence" was attributed to the sale of contaminated bird seed which exentually caused the death of birds whose owners purchased the seed. Similarly, in *City of Virginia Beach v. Aetna Cas. & Surety Co.*, 426 F. Supp. 821 (D.C. Va. 1976), a strong tidal current created by dredging a canal which resulted in the deterioration of bulk-heads and erosion fell within the definition of "occurrence" contained in the City's property damage liability policy.

In *Ohio Cas. Ins. Co. v. Terrace Enterprises, Inc.*, 260 N. W. (2d) 450 (Minn. 1977), the settling of an apartment building due to faulty construction, consisting of negligence in failing to backfill adequately, was held to be an "occurrence" within the terms of the liability policy issued to the construction company. See also *Southern International Corp. v. Poly-Urethane Industries, Inc. et al.*, 353 So. (2d) 646 (Fla. App. 1977); *Gruol Construction Co., Inc. v. Ins. Co. of North America*, 11 Wash. App. 632, 524 P. (2d) 427 (1974); *Stauffer Chemical Co. v. Ins. Co. of North America*, 372 F. Supp. 1303 (D.C.N.Y. 1973).

We conclude the allegedly negligent location of the house on the lot which created the exposure to a condition which resulted in property damage constituted an "occurrence."

This case is easily distinguishable from our recent decision in *General Ins. Co. of America v. Palmetto Bank et al.*, 268

S. C. 355, 233 S. E. (2d) 699 (1977), where we concluded an intentional distraint of slush machines by the lessor of the warehouse which housed the machines was not an "occurrence." We stated: "There was not an 'event' which resulted in property damage 'neither expected nor intended from the standpoint of the insured.' " 268 S. C. at 360, 233 S. E. (2d) at 701.

Accordingly, we hold the trial court correctly concluded that Aetna had a duty to defend the suit because the property damage alleged in the complaints resulted from an "occurrence." We also concur in the trial court's decision that the policy exclusions asserted by Aetna are inapplicable.

Exclusions in an insurance policy are always construed most strongly against the insurer. *Preferred Risk Mutual Ins. Co. v. Thomas,* 372 F. (2d) 227 (4th Cir. 1967) ; *Nationwide Mutual Fire Ins. Co. v. Collins et al.,* 136 Ga. App. 671, 222 S. E. (2d) 828 (1975). Moreover, the insurer bears the burden of establishing the exclusion. *Criterion Ins. Co. v. Hoffmann et al.,* 258 S. C. 282, 188 S. E. (2d) 459 (1972) ; *Southern Guaranty Ins. Co. v. Duncan et al.,* 131 Ga. App. 761, 206 S. E. (2d) 672 (1974).

Aetna next contends the policy did not provide coverage for the acts and damages for which attorneys' fees and the settlement were paid. Essentially, Aetna asserts that even if it were under an obligation to defend the Tilley suit, it is not liable to Boggs for the amounts expended by him. Since Aetna conceded the reasonableness of the settlement figure before the trial judge, it cannot now contend there was no proof of any damages covered by the policy. See *Jones v. Southern Surety Co.,* 230 N. W. 381 (Iowa 1929) ; *Georgia Southern & Florida Railway Co. v. U. S. Casualty Co. et al.,* 97 Ga. App. 242, 102 S. E. (2d) 500 (1958).

Finally, Aetna asserts the record does not support the trial court's conclusion that its refusal to pay was without reasonable cause. We disagree.

The legislature did not intend, by enactment of Code § 38-9-320 (1976), that attorneys' fees should be paid in every contested case won by the insured. *Baker v. Pilot Life Ins. Co.,* 268 S. C. 609, 235 S. E. (2d) 300 (1977). Here, however, the Tilley complaints established that Boggs was being sued because of an occurrence allegedly caused by his negligence. We conclude Aetna's refusal to defend was without reasonable cause. See *Donnelly v. Transportation Ins. Co.,* 589 F. (2d) 761 (C.A. 4 1978); 27 A.L.R. (3d) 1057.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.